**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORRIE ESTHER PIPKIN, | Case No. 1:22–cv–00572–SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |
| _____/ | |

## I. INTRODUCTION

On May 11, 2022, Plaintiff Corrie Esther Pipkin ("Plaintiff") filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. BACKGROUND

Plaintiff was born on May 18, 1979, has a high school education and some college, and previously worked as a nurse assistant/phlebotomist.  (Administrative Record ("AR") 30, 31, 156, 173, 326, 378, 418, 723.)  Plaintiff filed a claim for SSI payments on October 18, 2019, alleging she became disabled on October 18, 2019, due to fibromyalgia, anxiety, chronic pain, fatigue, bipolar disorder, blood clots, thyroid issues, heartburn, insomnia, sleep apnea, migraines,

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 10.)

headaches, arthritis, neuropathy, and depression. (AR 18, 156, 173, 326.)

**A.    Relevant Medical Evidence[2]**

    **1.    Physical Impairments**

Plaintiff has a history of deep vein thrombosis (DVT) since 1998. (AR 449.)

In July 2019, Plaintiff's history of migraine headaches was noted. (AR 474.) Her migraines were noted to be "in control with medications" in October 2019. (AR 894.)

Plaintiff was admitted to the hospital in September 2019 for DVT and treated with heparin and Eliquis. (AR 455, 462.) It was noted that she will require "lifelong [anticoagulants]" and was continued on Eliquis. (AR 464.)

In October 2019, Plaintiff presented to a vascular surgeon for a follow up. (AR 521–22.) She complained of "intermittent swelling and tingling" to her left leg, and reported that she "is only wearing the compression stockings 'when [she] go[es] out.'" (AR 521.) Plaintiff's left leg was "minimally swollen." (AR 521.) The provider noted that "venous duplex showed regression of the DVT until only the SFV and popliteal veins," and recommended that Plaintiff continue using compression stockings, leg elevation, and anticoagulation "indefinitely for post thrombotic syndrome." (AR 521.) Plaintiff's blood pressure was noted to be 138/80 in December 2019. (AR 447–49.)

In February 2020, consultative examiner Robert Wagner, M.D., performed a comprehensive internal medicine evaluation of Plaintiff, who complained of left leg DVT. (AR 729–34.) Plaintiff reported that she cooks, cleans, drives, shops, performs her own activities of daily living without assistance, and walks some for exercise. (AR 730.) Dr. Wagner observed that her extremities were "warm," with no "cyanosis, clubbing, or edema." (AR 732.) He diagnosed Plaintiff with DVT, noting that she had had "two deep vein thromboses in the left leg" and "[i]t is not clear if she has a diagnosis of inherited clotting disorder but she was placed on Eliquis for life." (AR 733.) Dr. Wagner noted Plaintiff "appears to have minimal if any swelling on the left leg on today's examination." (AR 733.)

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Plaintiff presented for a follow up appointment to the cardiovascular clinic in April 2020. (AR 823–25.) She reported feeling well. (AR 823.) Her physical examination was normal, with no clubbing, cyanosis, edema, or varicosities. (AR 824.) That same month, Plaintiff complained of migraine headaches. (AR 851–55.) Her physical examination showed normal sensation and neurologic findings. (AR 853–54.) Plaintiff's provider refilled her medication, Butalbital. (AR 853, 854.)

In August 2020, Plaintiff had a CT of her head, having complained of dizziness and "confusion." (AR 1014.) The results were "unremarkable." (AR 1014.)

### 2. Mental Impairments

In July 2019, Plaintiff's diagnosis of bipolar disorder was noted. (AR 474, 484.) Her medications included Seroquel and Effexor. (AR 474, 484.) Psychological examinations in November and December 2019 indicate a history of anxiety, but Plaintiff's mental status examinations were normal, showing that she was alert, oriented, and cooperative; had good eye contact, judgment and insight; a full affect and clear speech; and intact cognitive function. (AR 447–56.)

Plaintiff presented for a therapy session to "reduce anxiety and depression" in January 2020. (AR 545.) She described "racing worry thoughts" and a need to rely on anxiety mediation. (AR 545.) Plaintiff presented with good hygiene but anxious mood and a congruent constricted affect. (AR 545.) Her speech, thought process, and thought content are all normal. (AR 545.) The provider reviewed daily "anxiety management techniques" with Plaintiff, and noted that she reported "feeling calmer" and appeared "present focused." (AR 545.)

In February 2020, licensed psychologist Pauline Bonilla, Psy.D., performed a comprehensive psychiatric examination of Plaintiff. (AR 721–26.) She observed Plaintiff to have fair hygiene and grooming. (AR 724.) Plaintiff was cooperative and pleasant throughout the interview. (AR 724.) She complained of "ups and downs" with her moods (AR 722.) According to Plaintiff, her symptoms of anxiety became significant around 2017 because of relationship issues with her ex-boyfriend. (AR 722.) She reported experiencing shakiness and occasional heart palpitations that may occur when she is stressed, which is several times per month. (AR 722.)

3

Plaintiff noted that psychotropic medication has been helpful in managing her symptoms. (AR 722.)

Plaintiff reported she can complete her adaptive living skills independently, yet it takes her extra time. (AR 725.) She can engage in light duty chores as well as grocery shopping and running errands. (AR 725.) Plaintiff reported she can cook simple meals and drive a regular distance. (AR 725.)

Upon mental examination, Dr. Bonilla found Plaintiff's thought content was appropriate with no indications of hallucinations or delusions. (AR 724.) Plaintiff's mood appeared to be euthymic with good sleep. (AR 724.) Dr. Bonilla assessed Plaintiff with an adjustment disorder with anxiety. (AR 712.) Her social functioning was deemed "fair," as Plaintiff reported that she enjoys watching television and YouTube videos, playing video games on her phone, and sewing. (AR 725.)

According to Dr. Bonilla, Plaintiff's symptoms "appear[ed] to be in the mild to moderate range" and she "appear[ed] to be suffering from a major mental disorder." (AR 725–26.) The likelihood of recovery by Plaintiff was deemed to be good with psychotherapy. (AR 726.) Dr. Bonilla noted that Plaintiff's limitations appeared to be "primarily due to a combination of medical and mental health issues." (AR 726.) Dr. Bonilla opined that Plaintiff was mildly impaired in her social functioning, and that the likelihood of Plaintiff "emotionally deteriorating in a work environment" was minimal. (AR 726.)

In March 2020, Plaintiff presented for a follow up therapy session to "reduce anxiety and depression." (AR 743.) She had anxious mood with congruent constricted affect, but her speech, thought process, and thought content were all normal. (AR 743.) Plaintiff reported a resolution to her "racing worry thoughts" by setting a "healthy interpersonal boundary" in a relationship. (AR 743.) She continued to feel frustration and sadness, but felt "more in control" and displayed rational thinking. (AR 743.) Plaintiff was assessed with generalized anxiety disorder. (AR 743.) Treatment notes from June 2020 showed "increased moments of worry, anxiety, restlessness, [and] dizziness," but normal speech; fair mood; full affect; normal thought processes and content; normal cognition, attention, memory, and concentration; and good insight and judgment. (AR 1020–24.)

**B.     Plaintiff's Statement**

In July 2020, Plaintiff completed an adult function report. (AR 400–407.) Plaintiff reported that she is "unable to get up at certain times" due to a lack energy and stamina. (AR 400.) She also reported pain in her head, back, knees, and hips. (AR 400.) When asked to describe what she does from the time she wakes until she goes to bed, Plaintiff reported she gets up, smokes, plays games on her phone, reads her Bible, and watches television until she goes to bed. (AR 401.) She takes care of a dog. (AR 401.) She has insomnia and pain interferes with her sleep. (AR 401.) Plaintiff reported that she does not take care of her personal care every day. (AR 401.) She needs reminders to take medication and to do laundry. (AR 402.)

Plaintiff prepares simple meals one to two times a week, vacuums floors, cleans the bathroom, and wipes down counters. (AR 402.) She can drive, go out alone, and shop in stores once or twice per month. (AR 403.) Plaintiff reported she enjoys watching television and reading. (AR 404.) She spends time with others and attends church. (AR 404.) According to Plaintiff, she has anxiety with new people and places. (AR 406.)

**C.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on April 14, 2020, and again on reconsideration on August 5, 2020. (AR 191–95; AR 197–201.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 207–266.) The ALJ conducted a hearing on February 10, 2021. (AR 127–55.). Plaintiff appeared at the hearing with her counsel and testified. (AR 131–51.) A vocational expert also testified. (AR 151–55.)

   **1.     Plaintiff's Testimony**

Plaintiff testified she has fibromyalgia and suffers headaches or migraines almost every day. (AR 136.) She takes medicine for the headaches that "helps," but only for 60 percent of the time. (AR 136, 148.)

Plaintiff testified that she has DVT and suffers from swelling and pain in her leg. (AR 137.) She said when she is on her feet for a while or when she goes out, she is "supposed to wear support hose, but that does not stop [her] leg from still swelling up, and when that happens [she has] to elevate it, and . . .it doesn't go back to its normal size until the next day." (AR 137.) She elevates

5

her legs "pretty much the whole day" in a reclined chair. (AR 146.)

She testified she can take care of her personal care needs, but has pain when doing so. (AR 141–42.) According to Plaintiff, going out of her home triggers "anxiety and panic attacks." (AR 143.) She sees her psychiatrist for telehealth appointments every three months. (AR 145.)

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff had composite past work as a nurse assistant, Dictionary of Operational Titles (DOT) code 355.674-014, which was medium exertional work but performed at a heavy level, with a specific vocational preparation (SVP)[3] of 4; and a phlebotomist, DOT code 079.364-022, which was light exertional work with an SVP of 3. (AR 152.)

The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her work experience. (AR 152.) The VE was also to assume this person was capable of at least light work with the following additional limitations: occasional climbing; no climbing ladders, ropes, and scaffolds; occasional balancing; occasional stooping; occasional crouching; no kneeling or crawling; must avoid hazards including heights and moving machinery; is able to understand, remember, and carry out simple, routine, repetitive instructions; can tolerate occasional interaction with the public and requires low-stress jobs (defined as no production-rate pace work, only occasional changes in job setting, and only occasional decision-making responsibilities). (AR 152–53.) The VE testified that such a person could not perform Plaintiff's past relevant work, but that such individual could perform other, light jobs with SVP of 2 in the national economy, such as mail clerk, non-postal, DOT code 209.687-026; merchandise marker, DOT code 209.587-034; and clerical assistant, DOT code 239.567-010. (AR 153.)

Plaintiff's counsel asked the VE to assume a second hypothetical person with the same limitations as previously identified by the ALJ, but the person would require frequent unscheduled breaks out of an eight-hour day, must be able to elevate her legs during those breaks, and would

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

experience absences in excess of three days a month. (AR 153–54.) The VE testified that there would be no work such a person could perform. (AR 154.) The VE further testified that absenteeism of more than one day per month on a continuous basis or time off task of 15 percent or more, which equals to about 72 minutes over an eight-hour workday, would preclude competitive employment. (AR 154.)

**D.  The ALJ's Decision**

In a decision dated February 26, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 18–32.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 20–32.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since October 18, 2019, the application date (step one). (AR 20.) At step two, the ALJ found Plaintiff's following impairments to be severe: fibromyalgia, osteoarthritis, spine disorder, neuropathy, depression, obesity, and DVT. (AR 20–22.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 22–24.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except [Plaintiff] could occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. [Plaintiff] could occasionally balance, stoop, and crouch, but never kneel or crawl. [Plaintiff] must avoid hazards including heights and moving machinery. [Plaintiff] can understand, remember and carry out simple, routine, repetitive instructions, and can tolerate occasional interaction with the public, but requires low stress jobs defined as no production rate paced work, only occasional changes in job setting, and only occasional decision-making responsibilities.

(AR 25–30.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" they rejected Plaintiff's subjective testimony

7

as "not entirely consistent with the medical evidence and other evidence in the record." (AR 26.) The ALJ determined that Plaintiff was unable to perform her past relevant work (step 4), but was not disabled because, given her RFC, she could perform a significant number of other jobs in the local and national economies, specifically mail clerk (non-postal), merchandise marker, and clerical assistant (step 5). (AR 31–32.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 9, 2022. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*,

8

180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by

inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in not finding her migraine headaches and anxiety "severe" at step two. (*See* Doc. 18 at 11–15.) Plaintiff further asserts that the ALJ improperly discounted Plaintiff's testimony regarding her need to elevate her legs for edema caused by DVT. (*See id*. at 15–18.)

Defendant counters that that the ALJ did not commit harmful error in deeming Plaintiff's migraines and anxiety not severe, and the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations of DVT. (*See* Doc. 19 at 12–20.)

**A.   The ALJ Did Not Commit Prejudicial Error at Step Two**

Plaintiff first contends that the ALJ erred at the second step of the sequential evaluation

process by failing to find that her migraine headaches and anxiety were severe impairments.

At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 416.920(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." *Id*. An ALJ must consider all the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id*. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). The purpose of step two is to operate as "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step two finding is "merely a threshold determination" that "only raises a prima facie case of a disability."); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be considered when determining the RFC.") (internal citations omitted).

1.  Migraine Headaches

At step two, the ALJ found that Plaintiff's severe impairments included fibromyalgia, osteoarthritis, spine disorder, neuropathy, depression, obesity, and DVT, and determined that while "headache" was one of Plaintiff's "medically determinable impairments," it did not "cause more than minimal limitations in [Plaintiff's] physical ability to perform work activity and is therefore nonsevere."[4] (AR 21.) The ALJ's decision not to include migraine headaches as a severe impairment at step two is supported by substantial evidence in the record. In their step-two discussion, the ALJ found that Plaintiff "is prescribed and taking Butalbital, which controls her migraine headaches." (AR 21.) The evidence shows Plaintiff's migraines were noted to be "in

---

[4] The ALJ went one step further, and considered whether Plaintiff's migraines met or medically equaled "Listing § 11.03." (*See* AR 21.)

11

control with medications" in October 2019, during the month of alleged onset. (AR 894.) Impairments that are effectively controlled with medication or other medical treatment are not severe. *See Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]") (citations omitted).

The ALJ also identified objective medical evidence that "supports the finding that headaches are non-severe." (AR 21.) Physical examinations in April 2020 showed normal sensation and neurologic findings.[5] (AR 824, 853–54.) In August 2020, Plaintiff had a CT of her head, having complained of dizziness and "confusion." (AR 1014.) The results were "unremarkable." (AR 1014.)

Plaintiff asserts that the ALJ "should have considered the established diagnosis [of migraine headaches] to be a severe impairment" and cites excerpts from the record that she contends support the diagnosis. (*See* Doc. 18 at 12.) Her argument in this regard appears to conflate the *diagnosis* of headaches with a severe impairment. The mere diagnosis of an ailment is insufficient to establish a severe impairment. *See Febach v. Colvin*, 580 F. App'x 530, 531 (9th Cir. 2014) ("[D]iagnosis alone is insufficient for finding a 'severe' impairment, as required by the social security regulations."); *Holaday v. Colvin*, No. 2:14-cv-1870-KJN, 2016 WL 880971, at *12 (E.D. Cal. Mar. 8, 2016) ("The mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they were 'severe' for step two purposes."). Plaintiff's diagnosis is not in dispute. (*See* AR 21.) However, Plaintiff has not demonstrated that her headaches limit— much less "significantly limit"—her ability to work. The fact that Plaintiff's headache medication was prescribed on a "as needed" basis and refilled monthly does not itself establish severity. *See, e.g., Dorrell v. Colvin*, 670 Fed. Appx. 480, 480 (9th Cir. 2016) (unpublished) ("substantial

---

[5] Plaintiff points out that some of the ALJ's citations to the record appear to be incorrect. (*See* Doc. 18 at 12–13.) The Court notes that this is likely scrivener's error and finds that it is harmless, as the correct citations can be inferred from the decision. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record"); *Jackson v. Colvin*, No. 1:14–CV–01573–EPG, 2016 WL 775929, at *9 (E.D. Cal. Feb. 29, 2016) (court declined to elevate the technical form of the ALJ's decision above its substance and deemed the ALJ's inadvertent omission of a limitation in the express recitation of RFC harmless where the decision included consideration of the omitted limitation); *Gervais v. Colvin*, No. EDCV 12-1115-JPR, 2013 WL 3200518, *6 (C.D. Cal. June 24, 2013) (finding transcription error harmless).

evidence supported" the ALJ's finding that the claimant's "depression was not medically severe" because "[a]lthough the record established that [claimant] had a long history of depression, the record also established that her depression was treatable and responsive to medication").

Plaintiff also attempts to rely on her (and her mother's) subjective complaints to establish "significant work restrictions stemming from migraine headaches." (Doc. 18 at 12.) As discussed more fully below (*see* Section IV.B., *infra*), the ALJ properly discredited Plaintiff's subjective complaints; but even if they had not, such complaints alone cannot establish severity. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

The Court therefore concludes that substantial evidence supports the ALJ's omission of migraine headaches as a severe impairment at step two, as Plaintiff has not met her burden of demonstrating from the record that the headaches significantly limit her ability to perform basic work activities. *See Webb*, 433 F.3d at 686–87 (explaining that impairments are non-severe if they have no more than a minimal effect on a claimant's ability to work). *See also Bowen*, 482 U.S. at 146 n.5 (the plaintiff bears the burden at step two).

2.  Anxiety Disorder

Plaintiff correctly points out that the ALJ "made no finding as to whether anxiety disorder was severe or nonsevere." (Doc. 18 at 13.) Even if this failure was erroneous, however, such error was at most harmless.

A claimant is prejudiced at step two by an ALJ's omission of an impairment only where that step is not resolved in the claimant's favor. *See Burch*, 400 F.3d at 682 ("Here, the ALJ did not find that Burch's obesity was a 'severe' impairment . . . . Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."); *see also Hickman v. Comm'r*, 399 F. App'x 300, 302 (9th Cir. 2010) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other severe impairments and, thus, step two was already resolved in Hickman's favor."). Additionally, the failure to include an impairment in the step two analysis is harmless if the ALJ considers the

13

functional limitations that flow from said impairment in subsequent steps. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four); *see also Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

Step two was resolved in Plaintiff's favor when the ALJ determined that her severe impairments included fibromyalgia, osteoarthritis, spine disorder, neuropathy, depression, obesity, and DVT and the ALJ proceeded to the step three analysis. (AR 20–22.) It follows that, since Plaintiff's claims were not screened out at this step, she was not prejudiced by any error in the step two analysis.

More significantly, the ALJ went on to state in their RFC findings that they had "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (AR 21–22; *see, e.g., Sara Ann W. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00277-RHW, 2018 WL 4088771, at *4 (E.D. Wash. Aug. 27, 2018) ("[T]he ALJ specifically noted that she considered all symptoms in assessing the residual functional capacity. Accordingly, the Court finds the ALJ did not err in the step two analysis, and if any error did occur it was harmless.").) Contrary to Plaintiff's assertions, the ALJ's decision makes clear that they took Plaintiff's anxiety into account in assessing her RFC: the ALJ incorporated the limitations supported by substantial evidence in the record into the RFC, including a limitation to unskilled work with occasional socialization, changes, and decision-making (AR 25, 30).[6] *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that ALJ's error in not including bursitis as a severe impairment at step two was harmless in light of further analysis of that condition in the RFC). The ALJ also expressly discounted medical opinions that did not properly consider "evidence showing [Plaintiff] experiences anxiety in large crowds." (*See* AR 29 (finding the consultative examiner's opinion that Plaintiff is mildly limited in her social function "inconsistent with the evidence"); *see also* AR 28 (deeming the state agency physicians' opinions

---

[6] A limitation that, notably, was greater than that opined by every physician who provided such an opinion. (*See* AR 29–30.)

14

unpersuasive because "they opine [Plaintiff] has some mild limitations in one of the four areas of mental health functioning, which is unsupported by evidence showing the claimant has difficulty tolerating large crowds and new places . . . .").)

Plaintiff does not contest that the mental limitations the ALJ included in the RFC are directed to Plaintiff's anxiety. She instead asserts that the ALJ should have additionally found that Plaintiff's anxiety "would cause [Plaintiff] to be off task in excess of the 15 percent off-task tolerances to which the [VE] testified." (Doc. 18 at 14–15.) But Plaintiff does not point to any evidence in the record substantiating such a limitation, as is her burden to do. *Bowen*, 482 U.S. at 146 n.5.

The Court therefore finds no harmful error at step two.[7]

**B.    The ALJ Properly Discredited Plaintiff's Testimony**

**1.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show their impairment "could reasonably be expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[8] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's

---

[7] The foregoing analysis applies with equal force to Plaintiff's claim of migraine headache severity. Plaintiff asserts that "had the ALJ considered that at least three to four times per month Plaintiff would be absent from work due to migraine headaches, [they] would have found that Plaintiff could not meet the attendance demands of competitive work" (Doc. 18 at 14), yet she does not point to any evidence in the record that would support this limitation.

[8] The Court rejects the Acting Commissioner's contention that a lesser standard of review applies. (*See* Doc. 19 at 6 n.6.)

15

> reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

**2.     Analysis**

As set forth above, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 26.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 26.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Plaintiff limits her challenge to the ALJ's treatment of Plaintiff's testimony that "she must elevate her legs periodically throughout the course of an ordinary day due to swelling and pain associated with [DVT]." (Doc. 18 at 16.) Here, the ALJ found Plaintiff's statements not credible because they are inconsistent with her daily activities and inconsistent with evidence showing Plaintiff's DVT symptoms were controlled with treatment. (AR 28–29.) The Court takes each

finding in turn.

### a. Activities of Daily Living

First, the ALJ determined that Plaintiff's activities of daily living stated in her function report and testimony "were not consistent with her allegations of debilitating impairments." (AR 28.) As summarized by the ALJ, the record demonstrates Plaintiff is able to care for her dog (AR 401), can take care of personal tasks independently (AR 141–42, 401, 725), prepares simple meals (AR 402, 725), performs household chores including cleaning the bathroom, wiping down counters, and vacuuming the floors (AR 402, 730), drives a car (AR 133, 403, 725, 730), shops for groceries (AR 403, 725, 730), and attends church weekly (AR 404).

An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when evaluating credibility). In evaluating a claimant's credibility, an ALJ may also consider inconsistencies between the claimant's testimony and the claimant's conduct and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Molina*, 674 F.3d at 1112. Even where those activities suggest some difficulty functioning, they are grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

The Court finds that Plaintiff's above-described activities tend to suggest that she may still be able to perform, on a sustained basis, the basic demands of the occupations identified by the ALJ at steps four and five (*see* AR 31). *See Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing finances); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was

a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO, 2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints of claimant who suffered from chronic back problems where claimant engaged in activities such as preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies 2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes at home.).

As Plaintiff points out, the record also contains some contrary evidence, such as Plaintiff's statements that her ability to perform personal care tasks is hampered by pain. (*See* AR 141–42.) Yet the ALJ's decision properly recognized that Plaintiff has some work limitations because of pain. (*See* AR 30 (assessing a limited light RFC "supported by evidence showing DVT with symptoms including shortness of breath and fibromyalgia with related musculoskeletal impairments").) The Court concludes, however, that the ALJ properly discredited Plaintiff's testimony that her DVT requires her to elevate her legs "pretty much the whole day" (*see* AR 146) such that she is, per the VE (*see* AR 153–54), completely unable to work. *Fair*, 885 F.2d at 604; *see also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence."). Where the ALJ makes a reasonable interpretation of Plaintiff's testimony, it is not the Court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

      b.  <u>Symptomology and Treatment Regimen</u>

The other reason given by the ALJ for discrediting Plaintiff's subjective statements is that

her "symptomatology and treatment regimen support her allegations to a degree, but are not consistent with her allegations of debilitating impairments." (AR 30.) In October 2019, Plaintiff reported to her vascular surgeon that she "is only wearing [] compression stockings 'when [she] go[es] out.'" (AR 521.) In evaluating a claimant's claimed symptoms, an ALJ may consider a claimant's failure to follow a prescribed course of treatment when weighing a claimant's credibility. *See Tommasetti*, 533 F.3d at 1039–40; *Johnson v. Shalala*, 60 F.3d 1482, 1434 (9th Cir. 1995). In so doing, however, an ALJ must consider a claimant's explanation for failing to undergo the recommended treatment. *See Smolen*, 80 F.3d at 1284. As the Ninth Circuit explained in *Fair v. Bowen*, it is the claimant's burden to adequately explain his or her failure to follow a prescribed course of treatment. 885 F.2d at 603 (claimant's failure to explain failure to seek treatment or follow a prescribed course of treatment can "cast doubt" on the sincerity of their testimony); *see also Smolen*, 80 F.3d at 1293. An ALJ may discount a claimant's credibility due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039.

Here, Plaintiff does not explain her lack of compliance with treatment, instead pointing to Plaintiff's testimony that "she rarely leaves the house, and that even while around the house, if she has been on her feet, she must elevate her feet 'until they return to normal size,' which, she said, could take a full day." (Doc. 18 at 17 (citing AR 146).) But this testimony is not responsive to the relevant issue, which is whether, had Plaintiff used her compression stockings as recommended by her vascular surgeon (*see* AR 521), her DVT symptoms would be improved. Because Plaintiff proffers no explanation for her failure to follow her prescribed course of treatment, she has not met her burden of adequately explaining her failure to follow her treatment regimen. *See Fair*, 885 F.2d at 603.

Nor is Plaintiff's testimony corroborated by the medical evidence. As the ALJ observed (AR 27), Plaintiff's DVT symptoms were controlled with anticoagulant medication. (AR 27.) In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when the record shows their symptoms are controlled. *See* 20 C.F.R. § 416.929(c)(3)(iv); *see also Morgan*, 169 F.3d at 599 (ALJ's adverse credibility determination properly accounted for physician's report

19

of improvement); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment). Here, the medical record showed Plaintiff's left leg was noted by her vascular surgeon to be only "minimally swollen" in October 2019, the alleged onset month. (AR 521.) In February 2020, the consultative examiner similarly found Plaintiff "appear[ed] to have minimal if any swelling on the left leg on today's examination," and that she exhibited no "cyanosis, clubbing, or edema." (AR 732, 733.) An examination of Plaintiff at a cardiovascular clinic in April 2020 was normal, with no clubbing, cyanosis, edema, or varicosities. (AR 824.)

While Plaintiff may disagree with the ALJ's interpretation of the medical evidence regarding Plaintiff's DVT symptomology (*see, e.g.,* Doc. 18 at 18), it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604). The ALJ's determination that Plaintiff's complaints are inconsistent with the symptomatology and treatment regimen is therefore an additional clear and convincing reason for discounting her subjective symptom testimony. *See Molina*, 674 F.3d at 1113 (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence). *See also* 20 C.F.R. § 416.929(c)(3).

## V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.

The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  **July 28, 2023**                    /s/ *Sheila K. Oberto*
                                                                               UNITED STATES MAGISTRATE JUDGE